IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CENTRAL LABORERS' PENSION FUND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| COMMUNITY HEALTH AND EMERGENCY SERVICES, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

### Count I: Delinquent Contributions and Report Forms

NOW COMES Plaintiff, CENTRAL LABORERS' PENSION FUND, by and through its attorneys, Cavanagh & O'Hara LLP, complaining of the Defendant, COMMUNITY HEALTH AND EMERGENCY SERVICES, INC., and alleges as follows:

1. This action is brought and maintained in accordance with the provisions of the Labor Management Relations Act (LMRA), as amended, 29 U.S.C. §185(a), and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1001 *et seq.*, as amended, and is a civil action to recover pension contributions and other amounts owed to Plaintiff.

2. Federal District Courts have exclusive jurisdiction under ERISA over civil actions like the present action. (29 U.S.C. §1132(e)(1)).

3. Central Laborers' Pension Fund ("Plaintiff" or "Fund") is an employee benefit plan administered pursuant to the terms and provisions of a trust agreement creating said Fund and is required to be maintained and administered in accordance with the provisions of the Labor Management Relations Act of 1947, and ERISA (as amended), 29 U.S.C. §1001 *et seq.*

4. Plaintiff's administrative office is located in Jacksonville, Illinois, in Morgan County,

which is within the venue of the District Court for the Central District of Illinois, Springfield Division.

5. Plaintiff is a multiemployer pension plan as it receives contributions from numerous employers. (29 U.S.C. §1002(37)(A)(i)).

6. Community Health and Emergency Services, Inc. ("Defendant" or "CHESI") is an Employer engaged in an industry within the meaning of ERISA, 29 U.S.C. §1002(5) and (12).

7. Defendant's place of business is located in Carbondale, Illinois, within Jackson County, Illinois, and Defendant provides services in other southern Illinois counties including: Alexander, Hardin, Jackson, Pope, Pulaski, Saline, White, and Williamson.

8. Since 2007, Defendant has been obligated to make contributions to the Plaintiff pursuant to several labor agreements including a 2007 Participation Agreement, three collective bargaining agreements with the Laborers' International Union of North America, the Southern and Central Illinois Laborers' District Council and Laborers' Local 773 covering the periods of July 1, 2010 through June 30, 2013, July 1, 2013 to June 30, 2016, and July 1, 2016 through June 30, 2019.  Copies of these Agreements are attached hereto and incorporated herein as **Exhibits A-D**.

9. Defendant signed a separate agreement for a nursing care facility (called the Daystar Division) located in Cairo, Illinois and that agreement required the Defendant to pay contributions to the Plaintiff for all employees working at the Cairo facility.  **Exhibit E.**

10. Pursuant to ERISA, 29 U.S.C. §1145, Defendant has been required to make contributions to Plaintiff in accordance with the terms and conditions of the Plaintiff's Trust Agreement (**Exhibit F**), and the applicable labor agreements presented herein as **Exhibits A-E** (and collectively referred to as the "Labor Agreements").

11. Defendant employed individuals who are Participants in the Fund pursuant to the Labor Agreements.

12. These Participants performed work for which the Defendant was required to pay contributions and other amounts to the Plaintiff.

13. Defendant has failed to properly and timely pay all of the required contributions and other amounts to Plaintiff in contravention of Plaintiff's Trust Agreement and the applicable Labor Agreements.

14. Pursuant to Plaintiff's Trust Agreement, Defendant owes liquidated damages in the amount of 10% for all contributions paid late or contributions that are still owed. (Exhibit F, Section 7. Liquidated Damages.)

15. Pursuant to the terms of Plaintiff's Trust Agreement and the applicable Labor Agreements, Defendant is liable for reasonable attorneys' fees, court costs, and all other reasonable expenses incurred by Plaintiff in the collection of the amounts owed. (Exhibit F, Section 9. Collection Costs.)

16. Based on an audit of the Defendant's payroll and business records, Defendant owes Plaintiff for known delinquent contributions, liquidated damages, and audit costs in the amount of $28,434.11.  A breakdown showing the known amounts owed is attached hereto and incorporated herein as **Exhibit G**.

17. Additionally, Defendant has failed to submit all of the required remittance report forms to Plaintiff for the period of October 2016 through December 2016 and the period of February 2017 through current.

18. Due to Defendant's failure to submit the outstanding report forms, Plaintiff is

unable to determine the full amount of fringe benefit contributions and other amounts currently owed by Defendant.

19. Pursuant to the Trust Agreement, Plaintiff is authorized to perform an examination of the Defendant's books and records to determine the fringe benefit contributions owed to the Plaintiff. (Exhibit F, Section 10. Audits and the Costs Thereof.)

20. Pursuant to 29 U.S.C. §1132(g)(2), if judgment is entered in favor of Plaintiff in this matter, the Plaintiff is entitled to the unpaid fringe benefit contributions, interest, liquidated damages or double interest, and attorneys' fees.

WHEREFORE, Plaintiff prays as follows:

A. That judgment be entered in favor of the Plaintiff and against Defendant for all such monies found to be due—including unpaid fringe benefit contributions, liquidated damages, interest, audit costs, attorney fees, court costs, and all applicable statutory remedies pursuant to 29 U.S.C. §1132(g)(2) for the period of January 1, 2011 through current—at the time Judgment is rendered;

B. Specifically, that Defendant is ordered to pay to Plaintiff $28,434.11 in fringe benefit contributions, liquidated damages, and audit costs, plus any other amounts found to be owing at the time judgment is entered;

C. That Defendant be ordered to provide all books and records to allow the Plaintiff to determine the fringe benefits owed for the period of October 2016 through December 2016 and February 2017 through current.

D. That Defendant be decreed to pay Plaintiff its reasonable attorney fees and costs as provided by ERISA, 29 U.S.C. §1132(g)(2) and Plaintiff's Trust Agreement;

E. That Defendant be decreed to pay all costs attendant to these proceedings; and

F. That Plaintiff be awarded such other and further relief as the Court deems just and equitable, all at Defendant's costs.

## Count II: Surcharge Assessments

NOW COMES Plaintiff, CENTRAL LABORERS' PENSION FUND, by its attorneys, Cavanagh & O'Hara LLP, complaining of the Defendant, COMMUNITY HEALTH AND EMERGENCY SERVICES, INC., and alleges as follows:

1. This action arises under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132, 1085, and 1145.

2-12. Plaintiff re-asserts and re-alleges paragraphs 2 through 12 of Count I as paragraphs 2 through 12 of Count II as if fully set forth herein.

13. Pursuant to 29 U.S.C. §1085(e), the Fund is required to adopt a "rehabilitation plan" if the Fund's actuary certifies that its funding condition is in "critical status" as defined in 29 U.S.C. §1085(b)(2).

14. On December 29, 2011, the Fund was certified by its actuary to be in "critical status" for the plan year beginning on October 1, 2011.

15. The "rehabilitation plan," along with adoption forms for both the default schedule and the preferred schedule, was sent to Defendant which informed Defendant of the automatic employer surcharge assessments and the continuance of said employer surcharge assessments if the Defendant failed to adopt a schedule consistent with the "rehabilitation plan."

16. The information sent to Defendant informed Defendant that failure to adopt one of the schedules on or before March 1, 2012 would result in the imposition of the mandated 5% surcharge through September 30, 2012, and, effective October 1, 2012, a 10% surcharge assessment as required by 29 U.S.C. §1085(e)(7)(A)).

17.     Defendant failed to adopt a schedule consistent with the "rehabilitation plan" on or before March 1, 2012.

18.     Defendant reported hours worked by employees during the period of January 2013 through December 2013, but Defendant failed to pay the Fund the required surcharge assessments.

19.     Based upon information obtained for the period of January 2013 through December 2013, the Fund has determined that Defendant owes surcharges in the amount of $9,026.73.  A detailed breakdown of the various surcharges due for the requisite time periods is attached hereto as **Exhibit G**.

20.     The Fund has notified Defendant that Defendant's contributions were subject to the applicable surcharge and that Defendant was liable to remit such surcharge.

21.     Defendant, however, has failed to remit the surcharges and otherwise remit payment for such sums due and owing.

22.     Pursuant to 29 U.S.C. §1085(e)(7)(B)), the Fund is authorized to bring suit to collect employer surcharge assessments in the same manner as it would to collect delinquent contributions under 29 U.S.C. §1145.

23.     Pursuant to the terms of 29 U.S.C. §1132(g)) and Plaintiff's Trust Agreement (Exhibit F), Defendant is also liable for reasonable attorney's fees, court costs and all other reasonable expenses incurred by the Fund in the collection of surcharge assessments.

24.     Accordingly, pursuant to the Plaintiff's Trust Agreement and the applicable provisions of ERISA, Defendant is liable for unpaid surcharges, liquidated damages, interest, and reasonable attorney's fees and costs incurred by Plaintiff in this action.

WHEREFORE, Plaintiff prays as follows:

  A. That judgment be entered in favor of Plaintiff, CENTRAL LABORERS' PENSION FUND, and against Defendant, COMMUNITY HEALTH AND EMERGENCY SERVICES, INC., in the sum of $9,026.73, plus any additional surcharges that are found to be due and owing at the time judgment is rendered;

  B. That Defendant, COMMUNITY HEALTH AND EMERGENCY SERVICES, INC., be ordered to pay to Plaintiff its reasonable attorney's fees, liquidated damages, interests, and costs as provided by 29 U.S.C. §1132(g)(2)); and

  C. That Plaintiff is awarded, at Defendant's cost, such further and other relief as may be available under ERISA, Plaintiff's trust agreement, or as is otherwise just and equitable.

## Count III: Partial Withdrawal Liability

  NOW COMES Plaintiff, CENTRAL LABORERS' PENSION FUND, by its attorneys, Cavanagh & O'Hara LLP, complaining of the Defendant, COMMUNITY HEALTH AND EMERGENCY SERVICES, INC., and alleges as follows:

  1. This is an action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. §1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), codified at 29 U.S.C. §§1381-1453, to collect partial withdrawal liability from the Defendant.

  2. Federal District Courts have exclusive jurisdiction over civil actions to collect withdrawal liability from employers.  (29 U.S.C. §1451(c)).

  3. Venue for civil actions like the present action is proper in a federal District Court where the plan is administered. (29 U.S.C. §1451(d)).

4. Plaintiff's administrative office is located in Jacksonville, Illinois, within Morgan County, which is within the venue of the District Court for the Central District of Illinois, Springfield Division.

5. Plaintiff is an employee benefit plan administered pursuant to the terms and provisions of a Trust Agreement (Exhibit F) creating said Fund and is required to be maintained and administered in accordance with the provisions of the Labor Management Relations Act of 1947, and ERISA (as amended), 29 U.S.C. §1001 *et seq.*

6. Plaintiff is a "pension plan" within the meaning of ERISA, 29 U.S.C. §1002(2).

7. Plaintiff receives contributions from numerous employers, and therefore, is a multiemployer plan. (29 U.S.C. §1002(37)(A)(i)).

8. Plaintiff provides retirement and other benefits to the employees of participating employers who pay fringe benefit contributions to the Plaintiff on behalf of their employees.

9. At all relevant times, Community Health and Emergency Services, Inc. ("Defendant" or "CHESI") has been an Employer engaged in an industry within the meaning of ERISA, 29 U.S.C. §1002 (5) and (12).

10. Defendant is a not-for-profit corporation registered and authorized to do business in Illinois.

11. Defendant's place of business is located in Carbondale, Illinois, within Jackson County, Illinois, and Defendant provides services in other southern Illinois counties including: Alexander, Hardin, Jackson, Pope, Pulaski, Saline, White, and Williamson.

12. During all relevant times, Defendant was bound by at least one collective bargaining agreement under which Defendant was required to pay fringe benefit contributions to Plaintiff's pension plan on behalf of its covered employees. **(Exhibits A – E).**

13. As shown in Exhibit E, Defendant signed a separate collective bargaining agreement for its Daystar Care Center in Cairo, Illinois.

14. Specifically, Defendant signed this separate collective bargaining agreement as Community Health Emergency Services "CHESI": Daystar Division with the Laborers' International Union of North America, the Southern and Central Illinois Laborers' District Council and Laborers' Local 773 covering the period of July 3, 2010 through June 30, 2013.

15. Under this separate collective bargaining agreement for the Daystar Division, Defendant was obligated to report and pay contributions to Plaintiff on behalf of its employees performing work covered by this agreement at the Daystar Care Center in Cairo, Illinois.

16. Based on information and belief, Defendant ceased operations at the Daystar Care Center sometime after April 3, 2013 after it sold the facility pursuant to an asset purchase agreement.

17. After April 3, 2013, Defendant did not pay any fringe benefit contributions for work performed at the Daystar facility.

18. Plaintiff inquired about the termination of fringe benefit contributions for the Daystar facility but received no response to its inquiries.

19. After obtaining a copy of the asset purchase agreement, Plaintiff determined that Defendant did not comply with the terms and provisions of Section 1384 of ERISA that pertains to signatory employers who sell assets that encompass most or all of the assets used to operate their business.  (29 U.S.C. §1384)

20. Based upon information and belief, the new owners retained the same employees previously employed by the Defendant and those employees performed the same work under the new owners as they performed while employed by the Defendant.

21. Defendant continues to perform work at its other facilities and locations and such work requires the payment of fringe benefit contributions pursuant to applicable collective bargaining agreements.

22. The Defendant's sale of its Daystar facility, and its termination of its payment of contributions, coupled with the fact that the purchaser of the Daystar facility did not continue to make contributions to the Plaintiff, led to a decrease in the Plaintiff's contribution base.

23. The Defendant's termination of its obligation to contribute to Plaintiff under one, but fewer than all, of its collective bargaining agreements resulted in a "partial withdrawal" as defined in 29 U.S.C. §1385.

24. As a result of the partial withdrawal, Plaintiff determined the Defendant was liable for a partial withdrawal in the amount of $340,934.00.

25. On September 14, 2018, Plaintiff sent Defendant a notice and demand for payment of partial withdrawal liability (the "notice and demand"). **Exhibit H**.

26. In the notice and demand, Plaintiff gave the Defendant the option of (1) paying the partial withdrawal liability in full by November 15, 2018, or (2) paying the partial withdrawal liability in twenty-six (26) quarterly installments of $15,428.00 each, plus a final payment of $14,736.00, with the first quarterly payment due by November 15, 2018.

27. The notice and demand further advised Defendant that it could request Plaintiff to review this matter pursuant to 29 U.S.C. §1399(b)(2)(A).

28. Defendant sent Plaintiff two (2) separate letters dated October 4, 2018 and October 18, 2018 that Plaintiff considered to be requests for review pursuant to 29 U.S.C. §1399(b)(2)(A).

29. Plaintiff responded to Defendant's requests for review in letters dated October 12, 2018 and November 15, 2018.

30. Plaintiff's responses of October 12, 2018 and November 15, 2018 notified Defendant that the decision to assess partial withdrawal liability against Defendant in the amount of $340,934.00 remained unchanged.

31. Defendant did not seek arbitration to contest the assessed partial withdrawal liability pursuant to 29 U.S.C. §1401(a)(1).

32. Defendant did not pay its partial withdrawal liability in full by November 15, 2018, or alternatively, make the required first quarterly installment payment to Plaintiff by November 15, 2018.

33. On December 14, 2018, Plaintiff notified Defendant that it was in default because it had failed to pay the first quarterly partial withdrawal liability payment on November 15, 2018, and that it had sixty (60) days in which to cure its default. A copy of the default letter is attached hereto and incorporated herein as **Exhibit I**.

34. Defendant did not cure its default or remit any payment to Plaintiff within 60 days of Plaintiff's default letter.

35. Due to Defendant's failure to cure the default, Plaintiff has the right to require immediate payment of the outstanding amount of the partial withdrawal liability. 29 U.S.C. §1399(c)(5).

36. Additionally, Plaintiff is entitled to an award of interest on the total outstanding partial withdrawal liability from the due date of the first payment that was not timely made under 29 U.S.C. §1399(c)(5).

37. Pursuant to 29 U.S.C. §1451(b), this action may also be treated as an action to collect delinquent contributions. Pursuant to 29 U.S.C. §1132(g)(2), Defendant is entitled, upon entry of a judgment, to the unpaid withdrawal liability, interest, liquidated damages, and attorneys' fees and costs.

38. Pursuant to the terms of Plaintiff's Trust Agreement (Exhibit F), Defendant is liable for liquidated damages of ten percent (10%) reasonable attorneys' fees, court costs, and all other reasonable expenses incurred by Plaintiff in the collection of the amounts owed.

WHEREFORE, Plaintiff prays as follows:

A. That judgment be entered in favor of Plaintiff and against Defendant in the amount of $340,934.00 for the assessed partial withdrawal liability, plus liquidated damages at 10% of the assessed partial withdrawal liability, interest on the assessed partial withdrawal liability calculated at 7.5% per year beginning on November 15, 2018, and attorneys' fees and costs;

B. That Defendant be ordered to pay to Plaintiff all such monies determined to be due and owing to Plaintiff at the time judgment is entered, including, without limitation, the partial withdrawal liability, interest, liquidated damages, and attorneys' fees and costs;

C. That Defendant be ordered to pay Plaintiff its reasonable attorneys' fees and costs, as provided by ERISA (29 U.S.C. Section 1132(g)(2));

D. That Defendant be ordered to pay all costs attendant to these proceedings; and

E. That Plaintiff is awarded such other and further relief as may be available under ERISA, Plaintiff's trust agreement, or as the Court deems just and equitable, all at Defendant's cost.

        CENTRAL LABORERS' PENSION FUND,
        Plaintiff,

By:     s/ Timothy J. Shrake II
        TIMOTHY J. SHRAKE II
        **CAVANAGH & O'HARA LLP**
        2319 W. Jefferson Street
        Springfield, IL 62702
        Telephone: (217) 544-1771
        Fax: (217) 544-9894
        timshrake@cavanagh-ohara.com